**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN OF TEXAS**

| | | |
|---|---|---|
| JACOB ODOM, individually and on behalf of all others similarly situated, | : : : | |
| | : | **COMPLAINT - CLASS ACTION** |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. _____ |
| USHEALTH ADVISORS, LLC and USHEALTH GROUP, INC., | : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

---

## CLASS ACTION COMPLAINT

Plaintiff Jacob Odom, ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint (the "Complaint") against Defendants USHealth Group, Inc. and USHealth Advisors, LLC (collectively "Defendants" or "USHealth"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.     Plaintiff brings this Complaint against Defendants to secure redress because Defendants willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA") and the Texas laws prohibiting illegal telemarketing call, Chapter 305 of the Texas Business and Commerce Code, *et seq.* ("TX TCPA"), and invaded Plaintiff's privacy by causing unsolicited calls and text messages to be made to Plaintiff, as well as to members of the Classes (defined below) despite their registration on the national do-not-call list, and despite their requests that the calls cease.

2.     Defendants made their unauthorized calls without the recipients' consent and despite their inclusion on either the national or internal do-not-call lists of USHealth Advisors.

The calls were for the purpose of telemarketing and soliciting business from Plaintiff and members of the Classes.

3.      The TCPA and TX TCPA were enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Classes under the TCPA and TX TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.      Plaintiff Jacob Odom is a citizen of Texas and resides in Dallas County, Texas.

5.      Defendant USHealth Group, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business in Fort Worth, Texas. It is an insurance holding company that purports to focus on providing innovative health coverage for self-employed individuals and small business owners.  Through its wholly owned subsidiary USHealth Advisors, LLC, it sells insurance underwritten by its wholly owned subsidiaries, Freedom Life Insurance Company of America and National Foundation Life Insurance Company.

6.      Defendant USHealth Advisors, LLC is a limited liability company organized under the laws of Texas and maintains its principal place of business in Fort Worth, Texas. It is a wholly owned national health insurance distribution arm of USHealth Group, Inc. that sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America and National Foundation Life Insurance Company.

7.      Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it

was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute. This case is a related action to *Aaron Hirsch, individually and on behalf of all others similarly situated v. USHealth Advisors, LLC and USHealth Group, Inc.*, Civil Action No. 4:18-cv-245-Y, pending in the United States District Court for the Northern District of Texas, Fort Worth Division, before District Judge Terry Means.

9. The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and involves a federal question. Further, each of the Classes include at least 100 members.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' corporate headquarters are in this District, and because the wrongful conduct giving rise to this case occurred in, and/or emanated from this District.

12. Defendants are subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its principal offices which are located in this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## THE TCPA AND REGULATIONS

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     For purposes of the TCPA, text messages are considered telephone calls. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket 02-0278, Report and Order, 18 FCC Rcd. 14014, 14115 para. 165 (July 3, 2003).

15.     As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally prohibit certain calls to members of the National Do Not Call Registry ("NDNC").

16.     Furthermore, the FCC has held that "while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services. *See Petition Filed by DISH Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, CG Docket No. 11-50, para., 28 FCC Rcd 6574, 6584, para. 28 (May 9, 2013); See also *Campbell-Ewald Co. v. Ewald,* 136 S.Ct. 663, 673 (2016).

17.     Accordingly, an entity may be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity that directly placed the call.

---

[1]Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

18.     Finally, the TCPA established the NDNC, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC list, or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the NDNC. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC violates the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

19.     The NDNC allows consumers to register their residential landline and cellular telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2) and (e). A listing on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

20.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to telephone subscribers listed in the NDNC. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     A consumer may bring suit for liquidated damages of $500 per call against an entity where it has received two or more calls violating the regulations prescribed under Section (c) that were placed "by or on behalf of" the defendant. Liquidated damages may be trebled for will full violations.  47 U.S.C. § 227(c)(5).

22.     A Defendant may be liable for the acts of an agent where the agent has been authorized to make representations on behalf of the defendant, and acts as an express or apparent agent:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Dish Network*, at para. 46.

## COMMON FACTUAL ALLEGATIONS

23.     Defendants operate a health insurance services business that purportedly offers insurance products to individuals and others.

24.     Unfortunately for consumers, Defendants engage approximately 3,500 telemarketing agents nationwide who call consumers based on leads purchased by Defendants and purchased by themselves.

25.     Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers through third-party vendors that include Quote Wizard, Nace, Prospect America, Lead Hustler, and Telephone Marketing Services.  Some of these vendors are paid directly by USHA. Others are paid by insurance agents who exclusively market USHA products, and are reimbursed for their costs by USHA. In signing up new consumers for health insurance products, agents are compensated by USHealth Advisory. In some instances, agents are also compensated with shares of Defendant USHealth Group stock.

26.     Defendants have no idea whether the leads purchased by their agents are compliant with the NDNC or their own IDNC.

27.     In Defendants' overzealous attempt to market their services, they, through their agents, placed (and continue to place) phone calls and transmitted text messages to consumers who never provided consent to such calls and to consumers having no prior relationship with Defendants.

28.     The Defendants' agents are, in fact, agents because:

a.      Defendants engage the agents by written agreement to make telemarketing calls on their behalf to sell their health insurance products;

b.      Defendants pay agents when agents are successful in calling consumers and selling Defendants' insurance policies (USHealth Advisory by compensation or reimbursement, and USHealth Group by paying shares);

c.      Defendants consent to their using USHealth Group and USHealth Advisory trademarks and logos, which the agents use;

d.      Agents have access to Defendants' pricing of insurance products, which is not available to the public;

e.      Agents can obtain consumer telemarketing leads from Defendants' data systems (and pay for them), which is not available to the public; and

f.      Agents input consumer information into Defendants' data systems regarding their identity and health information, which is not available to the public.

29.     Through these agents, Defendants knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients and continued to make calls after requests that the calls stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Classes, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF

30.     Plaintiff is a 28-year-old Southern Methodist University graduate who currently works as an investment portfolio manager.

31.     On April 5, 2005, Plaintiff registered on the NDNC his cellular telephone number ending in 3512. That telephone number has remained on the NDNC since that time.

32.     Plaintiff uses the cellular telephone number ending in 3512. That telephone number is his personal and residential telephone number.

33.     During the period from January 2019 to the present (and possibly sooner), Defendants contacted Plaintiff on his cellular telephone number ending in 3512 multiple times without first obtaining Plaintiff's written consent and in violation of the NDNC and IDNC.

34.     Plaintiff received all calls and texts as described above on his cellular telephone assigned a number ending in 3512. All calls and texts were made as telemarketing calls or texts for USHealth.

35.     The website at "www.ushealthfamily.com" is the corporate website for defendant USHealth Group, Inc. The home page includes a picture of Troy McQuagge, the Chief Executive Officer of the company, and the pictures and names of "some of our Dedicated Agents," who are located across the country in numerous states including Arizona, Colorado, Florida, North Carolina, Oklahoma, Tennessee, and Texas.  The website provides additional information   about the company and its products and allows users to seek a free quote on insurance and to talk with a company representative.  The website states that it is copyrighted by USHealth Group.

36.     A related website for USHealth Group at "www.ushealthgroup.com" includes additional information about USHealth products, as well as about the business operations and personnel of USHealth, including press releases that state:

37.     "USHEALTH Group, Inc. is an insurance holding company based in F Worth, Texas focused on providing innovative health coverage for self-employed individuals and small business owners. The goal of USHEALTH is to combine the talents of its employees and agents to market competitive and profitable insurance products, while providing superior customer service in every aspect of the company's operations."; and

38.     "USHEALTH Advisors was founded in 2009 as Security Health Advisors, L.L.C. It is a wholly owned national health insurance distribution arm of USHEALTH Group, Inc. The company sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America and National Foundation Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. The company is focused on serving America's self-employed, small business and individual insurance market through its captive Agent sales force."

39.     The phone calls and texts to Plaintiff from USHealth began in approximately January, 2019. Plaintiff may have received calls and texts in November or December 2018 but is not sure. Prior to receiving these calls and texts, Plaintiff had received very few telemarketing calls, likely because his cell number was on the NDNC registry.

40.     The calls and texts that Plaintiff began to receive were USHealth agents trying to sell him a health insurance plan.  Plaintiff had never sought a health insurance plan as he gets health insurance through his job. Plaintiff never solicited or gave consent for such calls. In addition, many of the calls referred to Plaintiff as Jocilyn and one referred to him as Jocilyn Hernandez.

41.     On a number of occasions when USHealth agents called, Plaintiff asked them to stop calling.

42.     On January 16, 2019, Plaintiff received over 55 spam calls trying to sell him health insurance. The phone numbers for such phone calls included the following:

972-635-0268

469-415-9994

469-415-9996

866-227-3853

469-217-8776

469-299-5669

469-305-1505

469-342-0436

43.     On January 16, 2019, Plaintiff posted on Facebook that he had been receiving a high volume of telemarketing calls and asked for any tips on what he should do. He received a suggestion that he use a cell phone app called "RoboKiller".

44.     Plaintiff installed RoboKiller on his cellphone on January 17, 2019. The app tracked and logged the robocalls. The app also records some of the calls. The app also uses a robot to answer some of the calls and records those calls.

45.     Plaintiff installed the app and continued to receive numerous unwanted calls and texts. On Thursday, January 17, 2019, Plaintiff received ten unwanted and unsolicited calls, including three calls from 469-415-9994 and 469-415-9995.

46.     On Friday January 18, 2019, Plaintiff received twenty-four unwanted calls, including eight calls from 469-415-9994, 469-415-9995 and 469-415-9996.

47.     On Monday January 21, 2019, Plaintiff received twenty unwanted calls, including four calls from 469-415-9994, 469-415-9995 and 469-415-9996.

48.     On Tuesday January 22, 2019, Plaintiff received eleven unwanted calls, including five calls from 469-415-9994, 469-415-9995 and 469-415-9996.

49.     Plaintiff has evidence of 372 unwanted calls. In addition, there were multiple unwanted calls in January before Plaintiff began tracking the calls. Plaintiff believes Plaintiff received over 500 unwanted calls beginning in January 2019.

50.     Many of the calls that were answered by the bot feature of the "Robokiller" app were from different agents which begin their script with virtually the same statement: "Hello this is [agent's name] calling about affordable health care. Are you insured now?"

51.     In addition to the bot answering some of the calls, other calls went to voicemail. One of the voices in a recorded voicemail identifies himself as Stefan Marshall from US Health Advisors. He provides a phone number of 954-440-6604, which is a Fort Lauderdale, Florida phone number. An internet search shows Stefan Marshall is a Health Insurance Advisor for USHealth Advisors in the "Miami/Fort Lauderdale area" from January 2018 to the present.

52.     Another of the voices in the recorded voicemails identifies herself as Dianna Vaught from USHealth Advisors. She provides a phone number of 561-939-9305, which is a Palm Beach County, Florida phone number. An internet search shows Dianna Vaught has been a Licensed Health Agent for USHealth Advisors from April, 2016 to the present in Boynton Brach, Florida, with a phone number of 561-939-9305.

53.     Another of the voices in the recorded voicemails identifies himself as Josiah from USHealth Advisors. He provides a phone number of 954-998-1682. An internet search shows Josiah Graves has been a Licensed Health Agent for USHealth Advisors from January, 2013 to the present.

54.     Another of the voices in the recorded voicemails identifies herself as Patricia from USHealth Advisors. She provides a phone number of 407-921-3993. An internet search shows Patricia Conde is a USHealth Advisors Agent and the website has a picture of Patricia Conde and a phone number of 407-921-3993.

55.     Another of the voices in the recorded voicemails identifies himself as Ronnie from USHealth Advisors. Ronnie provides a phone number of 561-503-7014. An internet search shows Ronald Black is a USHealth Advisors Agent and the website has a picture of Ronald Black and a phone number of 561-503-7014. In his voice mail, Ronnie states:

*"Yeah, this is Ronnie. I just wanted to give you a call because I got something going on with your account here. I am showing you are getting a ton of phone calls right now and I am trying to fix the account. I am showing you requested some information on health insurance. So, I am either trying to fix that account for you, take care of the insurance or close your account out. So, if you want to get back to me at my cell phone at 561-503-7014, I would be happy to take care of that for you. Have a blessed day."*

56.     Another of the voices in the recorded voicemails identifies himself as Jesus Burga from USHealth Advisors. Jesus provides a phone number of 954-648-7448. An internet search shows Jesus Burga is a USHealth Advisors Agent living in Miami, Florida with a phone number of 954-648-7448.

57.     Another of the voices in the recorded voicemails identifies the caller as Justice Jones from US Health Advisors. He provides a phone number of 954-325-5938, which is a Fort Lauderdale, Florida phone number. An internet search shows Justice Jones is a Licensed Insurance Sales Agent for USHealth Advisors in Fort Lauderdale, Florida with a phone number of 954-325-5938.

58.     In addition, Plaintiff received multiple unwanted text messages beginning in January 2019. Plaintiff did not begin saving the unwanted text messages until March 2019. Plaintiff believes he received over 50 unwanted text messages beginning in January 2019.

59.     On March 16, 2019, Plaintiff received an unwanted text message from "Timothy a licensed agent with USHEALTH ADVISORS" asking if he still needed help in finding health coverage and gave a return phone number of 682-333-2225.

60.     On March 18 and March 19, 2019, Plaintiff received two unwanted text messages from Charles, a "health insurance advisor". The texts came from 407-501-8200 (an Orlando, Florida area code) and says in part "… I don't want to bother you with calls".

61.     On March 19, 2019, Plaintiff received an unwanted text message from Bonnie, a

"licensed health advisor". The text came from 407-412-2414 (an Orlando, Florida area code) and says in part "I want to apologize about the number of calls you have been getting over the past few days". A search of the internet finds Bonnie Phelps, a USHealth Advisor from Orlando, Florida.

62.     On March 20, 2019, Plaintiff received an unwanted text message from Camesha, a "Licensed State Health Advisor". The text came from 407-663-2209 and says "I didn't want to bombard you with calls, so I can communicate via text better. Are you still looking for health coverage?" A search of the internet finds Camesha Pennant-Scott, a USHealth Advisor agent with a listed phone number of 407-663-2209. Below is the text message:





63.     On March 23, 2019, Plaintiff received an unwanted text message from Jeremy, a "national USHealth Advisor". The text came from 210-764-5634.

64.     On March 30 and April 4, 2019, Plaintiff received two unwanted text messages from Staci, regarding health coverage. The texts came from 765-513-5951 (an Indiana area code) and say in part "Your file is 2 months old and you are still getting,(sic) calls, texts and emails for health coverage.. … I tried texting you yesterday to be respectful. I'm sure you've been getting a

number of calls. Let me fix that and put you in a better position." Below is the text message:



65.     On April 2, 2019 and April 3, 2019, Plaintiff received two unwanted text messages

from Dalton Mauro, "a licensed health professional with the state of TX." The texts came from

813-505-4136, a Tampa, Florida area code. A search of the internet finds Dalton Mauro, a

USHealth Advisor agent from Tampa, Florida from January 2017 to the present with a listed phone

number of 813-505-4136.

66.     On April 4, 2019, Plaintiff received an unwanted text message from Valentina, a

"Licensed Agent with the State of TX". The text came from 702-971-6311 (Nevada area code) and

says "I will only text you a quote, no phone calls/harassment …" A search of the internet finds

Valentia Cahill, a USHealth Advisor agent from Nevada with a listed phone number of 702-971-

6311.

67.     Almost all of the calls and texts above were made after USHealth agents were told

to stop calling Plaintiff.

68.     Plaintiff did not have a prior business relationship with Defendants, nor was Plaintiff interested in Defendants' services.

69.     Plaintiff did not consent to being called or texted by Defendants for telemarketing purposes and the calls and texts received from Defendants were an intrusion into Plaintiff's privacy and caused Plaintiff annoyance and an unnecessary expenditure of his time and efforts.

70.     Plaintiff is the exclusive cell phone user with the number ending in 3512.

71.     All of the calls described above were in violation of the TCPA's prohibition on telemarketing to consumers on the NDNC registry, and, many of them were made in violation of Defendant's INDC calling list.

## LEGAL BASIS FOR CLAIMS

72.     All calls Defendants made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1) and/or 47 U.S.C. § 227(c).

73.     Plaintiff has reason to believe that Defendants have called and texted, and continue to call and text, thousands of wireless telephone customers to market their products and services in violation of the NDNC and the IDNC regulations.

74.     Defendants' repeated violations of the NDNC and INDNC regulations demonstrate that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA and the rules and regulations promulgated thereunder.

75.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls to cellular phones and to residential phones that have been registered on the NDNC.

76.     On behalf of Plaintiff and the Classes, Plaintiff seeks an injunction requiring Defendants to cease all telemarketing to consumers on their cellular telephones and an award of

statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3)

of the Federal Rules of Civil Procedure individually and on behalf of the Classes, which include:

a.     The "NDNC Class," consisting of all persons in the United States who, within four years prior to the commencement of this litigation through the date that class notice is disseminated, received two or more calls and/or texts during a twelve month period made by or on behalf of USHealth on their residential or cellular telephone number that had been registered on the National Do Not Call Registry;

b.     The "IDNC Class," consisting of all persons in the United States who, within four years prior to the commencement of this litigation through the date that class notice is disseminated made by or on behalf of USHealth on their residential or cellular telephone number after they had requested that such calls cease;

c.     The "TX NDNC Class," consisting of all persons in Texas who, within four years prior to the commencement of this litigation through the date that class notice is disseminated, received two or more calls and/or texts during a twelve month period made by or on behalf of USHealth on their residential telephone number that had been registered on the National Do Not Call Registry; and

d.     The "TX IDNC Class," consisting of all persons in Texas who, within four years prior to the commencement of this litigation through the date that class notice is disseminated made by or on behalf of USHealth on their residential or cellular telephone number after they had requested that such calls cease.

78.     Plaintiff reserves the right to modify the Class definitions as warranted as additional

facts became known upon further investigation and discovery.

79.     Plaintiff and the Class members were harmed by Defendants' acts in at least the

following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff

and the Classes *via* their cellular and residential telephones, thereby causing Plaintiff and the

Classes to incur certain telephone charges or reduce telephone time for which Plaintiff and the

Class members paid, and by invading the privacy of Plaintiff and the Classes.

80.     The exact size of each of the Classes is presently unknown but can be ascertained

through a review of Defendants' records and the NDNC, and it is clear that individual joinder is impracticable. Defendants made telephone calls to thousands of consumers who fall into the definition of each of the Classes.

81.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

82.     Common questions for the Classes include, without limitation:

    a.      Whether Defendants' conduct violated the TCPA and TX TCPA;

    b.      Whether Defendants systematically made telephone calls or transmitted text messages to consumers residential or cellular telephones by making telemarketing calls and transmitting text messages to telephone numbers that had been registered on the NDNC list; and

    c.      Whether Defendants systematically made telephone calls or transmitted text messages to consumers residential or cellular telephones by making telemarketing calls and transmitting text messages to telephone numbers that had been registered on its IDNC list; and

    d.      Whether the acts of insurance agents working for USHealth who violated the TCPA may be imputed to the Defendants; and

    e.      Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

83.     Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

84.     Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions.

85.     Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes and making final injunctive relief appropriate with respect to the Classes as a whole.

86.     Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

87.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

88.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

89.     Thus, without class certification it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

90.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

91.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
## <u>VIOLATIONS OF THE TCPA</u>
## 47 U.S.C. § 227(c), 47 C.F.R. 64.1200(c)(2), and  47 C.F.R. 64.1200(e)

92.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

93.    Plaintiff and members of the NDNC Class registered their home landline or cellular telephones on the National Do Not Call list.

94.    Plaintiff and members of the NDNC Class received telemarketing calls and texts placed by or on behalf of Defendants while listed on the National Do-Not-Call list, without having provided prior express written consent and in violation of the NDNC.

95.    The foregoing acts by or on behalf of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to the above-cited provisions of 47 U.S.C. § 227, *et seq.*

96.    Defendants' conduct invaded the privacy of Plaintiff and the NDNC Class.

97.    As a result of Defendants' violations of the TCPA, Plaintiff and the NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

98.    Plaintiff and the NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
## <u>KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA</u>
## 47 U.S.C. § 227(c)

99.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as

though fully set forth herein.

100.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the NDNC Class are entitled to treble damages of up  to $1,500 for each and every call made to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5)(B).

**THIRD CAUSE OF ACTION**
**<u>VIOLATIONS OF THE TCPA</u>**
**47 U.S.C. § 227(c), 47 C.F.R. 64.1200(d), 47 C.F.R. 64.1200(e)**

101.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

102.     Plaintiff and the members of the IDNC Class received telemarketing calls and texts placed by or on behalf of Defendants, on their residential landline or cellular telephones, after they had requested that such calls cease, in violation of the IDNC.

103.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to the above-cited provisions of 47 U.S.C. § 227, *et seq.*

104.     Defendants' conduct invaded the privacy of Plaintiff and the IDNC Class.

105.     As a result of Defendants' violations of the TCPA, Plaintiff and the NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

106.     Plaintiff and the NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**FOURTH CAUSE OF ACTION**
**<u>KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA</u>**
**47 U.S.C. § 227(c)**

107.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as

though fully set forth herein.

108.     As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(c), by Defendants, Plaintiff and members of the IDNC Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5)(B).

### FIFTH CAUSE OF ACTION KNOWING AND/OR WILLFUL VIOLAITONS VIOLATIONS OF THE TX TCPA
### Chapter 305 of the Tex. Bus. And Com. Code

109.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

110.     Plaintiff and members of the Texas NDNC Class registered their home landline or cellular telephones on the National Do Not Call list.

111.     Plaintiff and members of the Texas NDNC Class received telemarketing calls and texts placed by or on behalf of Defendants while listed on the National Do-Not-Call list, without having provided prior express written consent and in violation of the NDNC.

112.     The alleged foregoing acts by or on behalf of Defendants constitute numerous and multiple violations of the TX TCPA, including but not limited to the violations of 47 U.S.C. § 227, *et seq.*

113.     Defendants' conduct invaded the privacy of Plaintiff and the Texas NDNC Class.

114.     As a result of Defendants' violations of the TX TCPA, Plaintiff and the Texas NDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to Tex. Bus. & Com. Code §305.053(b) and $1,500 for every knowing or intentional violation, pursuant to Tex. Bus. & Com. Code §305.053(c).

115.     Plaintiff and the TX NDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SIXTH CAUSE OF ACTION KNOWING AND/OR WILLFUL VIOLAITONS

**VIOLATIONS OF THE TX TCPA**
**Chapter 305 of the Tex. Bus. And Com. Code**

116. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

117. Plaintiff and the members of the TX IDNC Class received telemarketing calls and texts placed by or on behalf of Defendants, on their residential landline or cellular telephones, after they had requested that such calls cease, in violation of the TX TCPA.

118. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TX TCPA, including but not limited to the above-cited provisions of 47 U.S.C. § 227, *et seq.*

119. Defendants' conduct invaded the privacy of Plaintiff and the TX IDNC Class.

120. As a result of Defendants' violations of the TX TCPA, Plaintiff and the TX IDNC Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to Tex. Bus. & Com. Code §305.053(b) and $1,500 for every knowing or intentional violation, pursuant to Tex. Bus. & Com. Code §305.053(c).

121. Plaintiff and the TX IDNC Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**JURY DEMAND**

Plaintiff and the Classes demand a jury trial on all issues so triable.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests the following relief:

a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Law Office of Jim Zadeh, P.C. as Class Counsel;

b. An award of actual or statutory damages for each and every violation to

each member of the Classes pursuant to 47 U.S.C. § 227(c)(5)(B), and Tex. Bus. & Com. Code

§305.053(b) and (c);

       c.      An award of treble actual or statutory damages for each and every knowing

and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(c)(5)(B) and

Tex. Bus. & Com. Code §305.053(b) and (c);

       d.      Injunctive relief prohibiting Defendants' conduct complained of herein,

pursuant to 47 U.S.C. § 227(c)(5) and Tex. Bus. & Com. Code §305.053(b) and (c);

       e.      An award to Plaintiff and the Classes for their reasonable costs and expenses

incurred in this action, including attorney's fees and expert fees to the full extent permitted by law;

       f.      Pre-judgment and post-judgment interest on monetary relief; and

       g.      All other and further relief as the Court deems necessary, just and proper.

Dated: August 9, 2019

                     Respectfully submitted,

                     /s/Jamshyd (Jim) M. Zadeh
                     Jamshyd (Jim) M. Zadeh
                     Texas Bar No. 222239000
                     Law Office of Jim Zadeh, P.C.
                     1555 Rio Grande Avenue
                     Fort Worth, TX 76102
                     Telephone: (817) 335-5100
                     Facsimile: (817) 335-3974
                     jim@zadehfirm.com
                     *Attorneys for Plaintiff and Proposed Classes*